CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
for C'ville
JUN 1 2 2007
JOHN F. CORCORAN, CLERK
BY: Fay Coleman
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| KURT G. SCHLEGEL,<br><br>*Plaintiff,*<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>*Defendant* | CIVIL NO. 3:07cv00022<br><br>MEMORANDUM OPINION and ORDER<br><br>JUDGE NORMAN K. MOON |

This matter is before the Court on Defendant's Motion To Dismiss, filed on April 26, 2007 (docket entry no. 4). For the following reasons, this motion is hereby GRANTED.

### I. BACKGROUND

In a light most favorable to Plaintiff, the allegations are as follows.

Plaintiff Kurt G. Schlegel ("Plaintiff") is the president, secretary, and treasurer of Piedmont Building & Development Corporation ("Piedmont"), a closely held corporation organized under Virginia law. (Compl. ¶¶ 1, 6) Piedmont opened a corporate checking account ("Piedmont account") at a Charlottesville branch of Defendant Bank of America, N.A. ("Defendant" or "Bank") (Compl. ¶ 2) Piedmont's internal governing documents permit only the person holding either of two offices to transact business on the Piedmont account: the president or the chief executive officer. (Compl. ¶ 13)

Christopher C. Grieb ("Grieb"), a former Piedmont stockholder and director, sent a fax in November 2001 to Charles H. Hill Ewald ("Ewald"), a senior vice president of Defendant, instructing Ewald to transfer what Plaintiff describes as "a significant portion of Piedmont's

funds" from the Piedmont account to Grieb's personal account. (Compl. ¶¶ 3, 4) Defendant eventually transferred all of the funds in the Piedmont account to Grieb's personal account. (Compl. ¶ 5)

Plaintiff informed Defendant that Grieb was not authorized to access the Piedmont account and requested that Ewald produce the signature card on the Piedmont account. (Compl. ¶¶ 6, 7) Upon receiving the signature card—which did not list Grieb as an authorized signatory—Ewald froze the funds in Grieb's account in an amount equal to that which was withdrawn from the Piedmont account. (Compl. ¶ 8) Ewald also contacted the Virginia State Corporation Commission and received a copy of Piedmont's most recent annual report; the report did not list Grieb as either the president or the chief executive officer of Piedmont. (Compl. ¶ 14) For four months, Plaintiff tried—unsuccessfully—to have Defendant return the transferred funds to the Piedmont account.[1] (Compl. ¶ 9)

Finally, Plaintiff contacted other, higher-ranking Bank officials ("Bank officials") in an attempt to have the money returned to the Piedmont account. (Compl. ¶ 11) About the same time, Ewald contacted Ralph Eugene Main, Jr. ("Main"), who was Piedmont's former corporate attorney and who was at that time or recently had been Grieb's personal attorney. (Compl. ¶¶ 15, 16) Ewald requested certain corporate information about Piedmont—perhaps the same type of information Ewald had already requested from the Virginia State Corporation Commission. (Compl. ¶ 15)[2] Main responded to the request with a letter and certain attachments. (Compl. ¶ 18; Ex. A)

---

[1] These actions all led to Plaintiff filing suit in state court; in the suit, which is ongoing, he seeks relief for conversion, breach of contract, and for Defendant's alleged violation of the Virginia Wire Transfer Act. (Compl. ¶ 10; Mem. in Supp. of Bank of America, N.A.'s Mot. to Dismiss 2 n.2)

[2] Plaintiff seems to imply that Ewald was attempting to find *ex post* evidence that the transfer of funds from the Piedmont account to Grieb's personal account was proper and justified. Although Piedmont's internal governing documents, documents on file with the state corporation commission, and the Bank's signature card all failed to

- 2 -

Plaintiff alleges that Ewald's request of this information from Main was improper, constituted an intentional concealment of material facts (that is, Ewald failed to inform his supervisors—the Bank officials—of the circumstances surrounding the request), was unlawful, and was not commercially reasonable. (Compl. ¶¶ 19–21, 23–28, 42, 47) Plaintiff also alleges that the Bank officials, in investigating the circumstances surrounding the transfer of Piedmont funds from the Piedmont account to Grieb's account (Compl. ¶ 22), acted improperly (Compl. ¶¶ 29, 44, 47). Plaintiff alleges, too, that Main acted improperly and/or unlawfully in responding to Ewald's request. (Compl. ¶¶ 30–39, 41, 47)

As a result of Ewald's acts, the Bank officials' acts, and Main's acts, Plaintiff's funds remained frozen; he therefore sued in state court, claiming that Defendant violated Virginia's civil conspiracy statute. *See* Va. Code Ann. § 18.2–499 (West 2007). Defendant timely removed and filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Defendant argues that Plaintiff has failed to allege any kind of concerted action or preconceived plan by Main, Ewald, and the Bank officials and that Plaintiff has failed to allege facts that would give rise to an inference of concerted action or preconceived plan. Additionally, Defendant argues that Main's involvement came after the alleged wrongful transfer and subsequent freezing of funds, and, therefore, Plaintiff's claim is legally insufficient.

Plaintiff relies on language from *Conley v. Gibson*, 355 U.S. 41 (1957), in arguing that in order to grant Defendant's motion, the court must find "to a certainty ... that no set of facts

---

show that Grieb was authorized to transfer the funds, Plaintiff implies that Ewald later sought other, less-reputable information to justify the Bank's transfer of money.

provable in support of the claim made would entitle" him to relief.³ He also argues that merely alleging that "Ewald doing one part," "Main doing his part," and "the Bank doing its part" results in the conclusion that "[s]urely this is a combination" contemplated by the civil conspiracy statute.

## II. STANDARD OF REVIEW

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999). In considering a Rule 12(b)(6) motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *See id.* at 244; *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254–55 (W.D. Va. 2001).

Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, No. 05–1126, 2007 WL 1461066, at *8 (U.S. May 21, 2007) (alteration in original omitted) (citations omitted) (internal quotation marks omitted). Instead, "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citation omitted) (footnote call number omitted). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that

---

³ The Supreme Court recently held, however, that *Conley* "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Bell Atl. Corp. v. Twombly*, No. 05–1126, 2007 WL 1461066, at *11 (U.S. May 21, 2007). Indeed, in *Twombly*, the Supreme Court explicitly abrogated the "no set of facts" language from Rule 12(b)(6) jurisprudence. *See id.* ("*Conley*'s 'no set of facts' language has been questioned, criticized, and explained away long enough"; "after puzzling the profession for 50 years, this famous observation has earned its retirement.").

is plausible on its face"; plaintiffs must "nudge[] their claims across the line from conceivable to plausible" or "their complaint must be dismissed." *Id.* at 14. As the Fourth Circuit has held, a plaintiff "must sufficiently allege facts to allow the Court to infer that all elements of each of his causes of action exist," *see Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 344–45 (4th Cir. 2006), *reh'g en banc denied*, 467 F.3d 378 (4th Cir. 2006), *cert. denied*, 127 S. Ct. 2036 (2007).

## III. DISCUSSION

Count I of Plaintiff's complaint alleges that Defendant has conspired to injure Plaintiff in his business, trade, or reputation and, therefore, that Defendant has violated Virginia Code § 18.2–499.

Under Virginia Code § 18.2–500, "[a]ny person who [is] injured in his reputation, trade, business or profession by reason of a violation of § 18.2–499"—Virginia's conspiracy statute— may seek relief in a civil court. Va. Code Ann. § 18.2–500 (West 2007). In turn, the relevant portion of Virginia Code § 18.2–499 imposes liability on "[a]ny two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of … willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever …." Va. Code Ann. § 18.2–499 (West 2007).

To ultimately prevail under the Virginia conspiracy statute, a plaintiff must prove by clear and convincing evidence the following elements: (1) concerted action; (2) legal malice; and (3) causally related injury. *See Va. Vermiculite, Ltd. v. W.R. Grace & Co.—Conn.*, 144 F. Supp. 2d 558, 601 (W.D. Va. 2001), *aff'd on other grounds sub nom., Va. Vermiculite, Ltd. v. Historic Green Springs, Inc.*, 307 F.3d 277 (4th Cir. 2002); *see also Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 108 F.3d 522, 526 (4th Cir. 1997).

"Concerted action" reflects the statutory requirement that a plaintiff ultimately prove that

someone "combined, associated, agreed, mutually undertook, or concerted together" with someone else in the injurious conduct. *See* Va. Code Ann. § 18.2–499 (West 2007); *Simmons v. Miller*, 544 S.E.2d 666, 677 (Va. 2001). This means that a plaintiff must prove that the defendants "combined together to effect a preconceived plan and unity of design and purpose." *Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*, 261 F. Supp. 2d 483, 499 (E.D. Va. 2003) (internal quotation marks omitted).[4] After all, this "common design is the essence of the conspiracy." *Id.* To survive a motion to dismiss, then, a plaintiff "must at least plead the requisite concert of action and unity of purpose," *id.*, and must do so "in more than mere conclusory language," *id.* (internal quotation marks omitted).[5]

"Legal malice" requires showing "that the defendant acted intentionally, purposefully, and without lawful justification" to injure the plaintiff. *Simmons v. Miller*, 544 S.E.2d 666, 677 (Va. 2001). A plaintiff need not prove that the defendant's primary and overriding purpose was

---

[4] Plaintiff claims that *Bay Tobacco* is not good law on this point. The court in *Bay Tobacco* cited *Bull v. Logetronics, Inc.*, 323 F. Supp. 115 (E.D. Va. 1971), for support for the proposition that a conspiracy claim requires a "preconceived plan and unity of design and purpose"; *Bull*, in turn, cited both an Eighth Circuit case and an entry from the legal encyclopedia Corpus Juris Secundum. Plaintiff claims that the Eighth Circuit case cited is inapposite because it is from the Eighth Circuit and because it arose under Nebraska law; Plaintiff also claims that subsequent entries from Corpus Juris Secundum do not contain the language "preconceived plan and unity of design and purpose."

But that language from *Bay Tobacco* (1) has not been found to be objectionable by any subsequent court, (2) has been embraced by a subsequent, published decision from the Eastern District of Virginia, *see First Hand Commc'ns, LLC v. Schwalbach*, No. 1:05cv1281, 2006 WL 3500901, at *5 (E.D. Va. Dec. 4, 2006); (3) has been embraced by a subsequent decision of this court, *see M-CAM, Inc. v. D'Agostino*, No. 3:05cv00006, 2005 WL 2010171, at *2 (W.D. Va. Aug. 22, 2005) (unpublished decision); and (4) has been embraced by a subsequent decision of a Virginia state court, *see Rohrbaugh v. Kreidler*, No. 06-394, 2006 WL 2032640, at *4 (Va. Cir. Ct. July 20, 2006) (unpublished decision).

Regardless, it is the very nature of a conspiracy that two people agree together on some purpose. *See, e.g.*, Va. Code Ann. § 18.2–499 (West 2007) ("Any *two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of* ... willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever ...." (emphasis added)); Model Penal Code § 5.03(1) ("A person is guilty of conspiracy *with another person* ... to commit a crime if *with the purpose of promoting ... its commission he ... agrees with such other person* ... or *agrees to aid such other person* ...." (emphasis added)).

[5] Notably, a principal and his agent cannot engage in concerted action. *Mich. Mut. Ins. Co. v. Smoot*, 128 F. Supp. 2d 917, 925 (E.D. Va. 2000) ("Generally, an agent cannot conspire with its principal."); *Bowman v. State Bank of Keysville*, 331 S.E.2d 797, 801 (Va. 1985) ("Of course, there must be two persons to [constitute] a conspiracy, and a corporation, like an individual, cannot conspire with itself."). Therefore, here, Plaintiff must be able to show that the concerted action involved (1) Main and (2) either Ewald or the Bank officials (collectively "Bank").

to injure the plaintiff's reputation, trade, or business, but, importantly, the plaintiff must prove that such a purpose was at least *one* of the purposes of the conspiracy. *See Simmons*, 544 S.E.2d at 676–77.

Here, Defendant argues that even taking as true Plaintiff's allegations that actions by Ewald, Main, and Bank officials were unlawful or improper, Plaintiff "does not allege any concerted action … or the existence of any preconceived plan" and "fails … to allege even a single fact showing how Ewald and Main actually worked together or what actions they took, or what preconceived plan they were supposedly executing." (Def.'s Mot. to Dismiss 5)

I agree with Defendant.

Plaintiff here essentially bases his conclusion that there must have been a conspiracy on a "but for" argument: "Ewald would have been unable to continue the freeze of funds had Main not provided him with the information he did, and Main individually has no way of effecting Bank policy in his client's (Grieb's) favor. Thus it became a mutual undertaking because it had to, neither alone able to achieve the result desired, which they did when their efforts were combined." (Mem. in Opp'n to Def.'s Mot. to Dismiss 4) In other words, Plaintiff argues that but for Ewald's actions and Main's actions, he would not have been injured.

But to read a "but for" test of "conspiracy" and "concerted action" into Virginia's civil conspiracy statute would mean that two people acting independently would be civilly liable any time their independent acts resulted in a harm to a person's reputation, trade, business or profession, regardless of whether the two people actually came to an agreement (whether explicit or implicit) regarding the purpose of their actions. Such a reading would be far too expansive.

Other courts have granted motions to dismiss under Rule 12(b)(6) on allegations that are arguably more comprehensive than are the allegations here. For example, in *Bay Tobacco, LLC v.*

- 7 -

Case 3:07-cv-00022-NKM-mfu    Document 20    Filed 06/12/07    Page 7 of 11    Pageid#: 113

*Bell Quality Tobacco Products, LLC*, 261 F. Supp. 2d 483 (E.D. Va. 2003), the plaintiff claimed damages pursuant to section 18.2–499. *See Bay Tobacco*, 261 F. Supp. 2d at 499. The *Bay Tobacco* plaintiff's complaint stated that one of the defendants misrepresented its intent to do business with the plaintiff, that the same defendant delayed doing business with the plaintiff, that a co-defendant published a statement that the plaintiff was going out of business, and that the two defendants withheld certain packaging materials that the plaintiff needed. *See id.* The plaintiff claimed that "taken together," these allegations "prove that the two defendants conspired." *See id.* The court disagreed and held that the plaintiff's allegations were "woefully inadequate" to show concerted action. *See id.* The plaintiff simply had not alleged that the defendants "combined together to effect a preconceived plan and unity of design and purpose." *See id.*

Similarly, Plaintiff here has merely alleged that Ewald independently acted improperly, Main independently acted improperly, and the Bank officials independently acted improperly, all to Plaintiff's detriment. Ergo, he says, those three must have acted in concert. Plaintiff simply has not alleged any facts that would allow the court to infer that any Main and the Bank acted together. His claim must therefore be dismissed.[6]

---

[6] Following the hearing on Defendant's motion to dismiss, Plaintiff filed a supplemental memorandum opposing the motion. In the memo, Plaintiff cites three cases for the proposition that a preconceived plan need not be alleged or proved in order to succeed on a civil conspiracy claim. Plaintiff either misinterprets these cases or the cases are inapposite.

First, Plaintiff cites *Garrett v. Langley Federal Credit Union*, 121 F. Supp. 2d 887 (E.D. Va. 2000). In *Garrett*, the plaintiffs were former employees of one of the defendants who were fired or forced to resign after an investigation by a national credit union administration official revealed that the plaintiffs suggested to the official that at least two high-ranking employees in their company were acting improperly. In denying the defendants' motion for summary judgment, the court noted that the official had later met with the high-ranking employees and had essentially disclosed the plaintiffs' identities to the executives under suspicious circumstances. The court stated that this scenario "amply demonstrate[d] the odor that is permeating this case." *See Garrett*, 121 F. Supp. 2d at 907. Here, Plaintiff has not alleged that such a troubling scenario took place or that Main ever met with or spoke with Defendant with regard to the money transferred from Piedmont's account.

Second, Plaintiff cites *Lewis v. Gupta*, 54 F. Supp. 2d 611 (E.D. Va. 1999). In *Lewis*, the plaintiff sued his former girlfriend and her parents after prosecutors determined the girl wrongfully identified the plaintiff as the person responsible for raping her. In his complaint, the plaintiff alleged that the girl and her parents met with prosecutors, during which time the girl identified the plaintiff as her attacker and the mother stated that the family was receiving strange phone calls, likely from the plaintiff. He also alleged that during a monitored phone call, the mother "indicated that she knew her daughter's claims were false and that she nevertheless supported her in these claims." *See Lewis*, 54 F. Supp. 2d

- 8 -

Even if Plaintiff had sufficiently alleged concerted action, however, he has failed to allege legal malice. Again, to succeed, Plaintiff would have to show that the Defendant had *as one of its purposes* injury to Plaintiff's reputation, trade, or business. *See Simmons v. Miller*, 544 S.E.2d 666, 676–77 (Va. 2001). But here, Plaintiff has not alleged that Defendant acted with the required mens rea: intentionally and purposefully. Additionally, nothing in Plaintiff's complaint would support such an inference. Because Plaintiff has failed to allege such a purpose and because there are no facts in his complaint that would support an inference of such a purpose, his complaint is legally insufficient.

---

at 618. Notably, the court dismissed the plaintiff's conspiracy claim against the father because "[w]thout some evidence indicating that [the father] knew his daughter was lying, his mere presence at meetings and hearings does not support the inference that he conspired with [the mother and daughter] to defame and maliciously prosecute [the plaintiff]." *Id.* at 619. The court denied the defendants' motion to dismiss with respect to the mother and daughter because the plaintiff "pled specific facts in support of his conspiracy claim against [the mother], namely her presence at various hearings, her reports of 'strange phone calls' to the [family] home[, her] suggestion that [the plaintiff] was making those calls, and her monitored telephone conversation with the plaintiff." *Id.* Those facts, the court held, were sufficient to allow the court to infer that the mother "knew that her daughter's accusations were false, yet took active steps to assist the prosecution based on these accusations and to encourage her daughter to continue in these accusations." *Id.* The court concluded by stating that "[t]hese allegations are adequate to support an inference of an express or tacit agreement between [the daughter and mother] to continue the defamation and malicious prosecution of [the plaintiff]." *Id.* Again, here, there simply are no facts that would allow me to conclude that Main and any Bank employee tacitly or expressly agreed to do something to harm Plaintiff.

Finally, Plaintiff cites *Allen Realty Corp. v. Holbert*, 318 S.E.2d 592 (Va. 1984). In *Allen Realty Corp.*, the real estate company plaintiff sued an accounting firm and one of its employees (Holbert). The plaintiff had hired the firm to assist it in liquidating several of its real estate holdings. *See Allen Realty Corp. v. Holbert*, 318 S.E.2d at 593–94. An interested buyer sent offer letters to the plaintiff, but only one of the plaintiff's employees (Roberts) saw the offers. Roberts told Holbert about the offers, but Holbert instructed Roberts to not disclose them to any other of the plaintiff's employees, including the president, who was then in a hospital, or to any officer, director, or stockholder of the plaintiff. *Id.* at 594. Instead, Holbert instructed Roberts to present to the plaintiff's president a contract to sell the parcels to a company whose president (Kunzman) was a friend of Holbert's. *See id.* The company was unaware of the Holbert-Kunzman connection, but still rejected the contract and ultimately sold the parcels to other buyers. *Id.* The plaintiff later learned that Holbert and Kunzman were "old friends," that Holbert told Roberts to cooperate with Kunzman, and that Kunzman told Roberts to take his contract to buy to the plaintiff's president, who was still in the hospital. The Virginia Supreme Court reversed dismissal of the conspiracy allegation stating that it was clear there could have been an agreement between Holbert and Kunzman or between Holbert and Roberts or among all three. Although Plaintiff here points out that the *Allen* plaintiff "did not allege that [Roberts] had any knowledge of the true scope or breadth of the plan," he skips over the fact that there were sufficient facts in *Allen* for the court to infer that *a plan actually existed.* In *Allen,* the most likely "plan" was between Holbert and Kunzman—"old friends" who were looking to make an illegal profit. Here, however, there are simply no facts that would allow me to infer that Main and any Bank employee had any kind of "plan"—at most, Main and the Bank employees *independently* acted improperly, but there is nothing to suggest that they were acting in concert.

Case 3:07-cv-00022-NKM-mfu    Document 20    Filed 06/12/07    Page 9 of 11    Pageid#: 115

And if all this were not enough, Plaintiff must plead business conspiracy with particularity, which he has failed to do here. *See Gov't Employees Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d 700, 706 (E.D. Va. 2004) ("However, business conspiracy, like fraud, must be pleaded with particularity, and with more than mere conclusory language. The heightened pleading standard prevents every business dispute [from] becoming a business conspiracy claim." (internal quotation marks omitted)).

Therefore, because Plaintiff has not pled his business conspiracy claim with particularity—indeed, he has failed to even plead two of the elements of business conspiracy (concerted action and legal malice)—Plaintiff's complaint must fail. To put it more simply, even if Plaintiff could prove all of the allegations in his complaint, he would be unable—as a matter of law—to recover under Virginia Code § 18.2-500.

One final note: I would be willing to grant Plaintiff leave to amend his complaint to allege facts that could allow his case to survive a motion to dismiss, but Plaintiff gave no indication at oral argument that he could make such allegations even if he chose to do so. As such, Plaintiff's complaint must be dismissed with prejudice and without leave to file an amended complaint.

## IV. CONCLUSION

For the foregoing reasons, it is hereby ordered that Defendant's motion to dismiss (docket entry no. 4) be GRANTED, Plaintiff's claim be DISMISSED WITH PREJUDICE, and that this case be STRICKEN FROM THE DOCKET.

It is so ORDERED.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and Order to all counsel of record.

ENTERED: /s/ Norman K. Moon
United States District Judge

June 12, 2007
Date